UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| ELTON CANSLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. #1:16-cv-_____ |
| | ) |
| ALAN A. HANKS, | ) |
| Fairfax County Police Department | ) |
| 4100 Chain Bridge Road | ) |
| Fairfax, VA  22030 | ) |
| | ) |
| and | ) |
| | ) |
| EDWIN C. ROESSLER, JR., | ) |
| Fairfax County Police Department | ) |
| 4100 Chain Bridge Road | ) |
| Fairfax, VA  22030 | ) |
| | ) |
| and | ) |
| | ) |
| FAIRFAX COUNTY | ) |
| | ) |
| Serve: Edward L. Long, Jr., County Executive | ) |
|        12000 Government Center Parkway, #552 | ) |
|        Fairfax, VA  22035 | ) |
| | ) |
| Defendants. | ) |

COMPLAINT

Preliminary and Jurisdictional Statement

1. Elton Cansler is a 37 year old African-American male with cerebral palsy and readily discerned physical and mental health issues.  Following a period of disorientation in which he entered a bank and peacefully left with someone else's sunglasses, he was stopped by defendant police officer Alan A. Hanks.  When asked if he had the sunglasses in his possession,

Mr. Cansler immediately acknowledged that he did, and handed them to the officer. Officer Hanks then told Mr. Cansler to place his hands on the police cruiser, which he did, following which Officer Hanks, acting without cause, discharged a Taser into his back, sending up to 100,000 volts of electricity into his body. This use of force was unreasonable and disproportionate to any legitimate law enforcement need. Mr. Cansler now seeks compensation for the injuries he sustained due to Officer Hanks' excessive use of force, and also from Fairfax County, which has confirmed through its Police Chief Edwin Roessler that Officer Hanks was acting in accordance with its policies in tasing Mr. Cansler. This case arises under the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983. This court has jurisdiction under 28 U.S.C. §1331.

Parties

2. Plaintiff Elton Cansler is a 37-year old long-time resident of Alexandria, Virginia. He has cerebral palsy and his intellectual abilities have been assessed in the extremely low range of functioning. His physical mobility is noticeably impaired, he speaks with a discernable stutter, and his mental health challenges are readily apparent. He is African-American.

3. Defendant Alan A. Hanks is, and at all relevant times was, a police officer employed by the Fairfax County Police Department. He is white. He is sued in his individual capacity for damages.

4. Defendant Edwin C. Roessler, Jr. is and at the time relevant to this action was the chief of Fairfax County Police Department. Chief Roessler promulgates and is responsible for having all police officers trained in the department's policies, including policies on the use of

Tasers. Where necessary, he also investigates and acts on possible breaches of policy so as to ensure ongoing compliance therewith. He is white. He is sued here in his individual capacity for damages.

5. Fairfax County is a Virginia county. It operates Fairfax County Police Department to maintain law and order. To this end, the county, through Chief Roessler, sets and propagates use of force policies by which their police officers must abide.

## Claim For Relief

6. On or about September 24, 2015, Mr. Cansler was walking near the Rose Hill shopping center in Fairfax. He developed an irrational fear that he was in need of a secure refuge. For this reason, he entered a branch office of Suntrust Bank in the shopping center.

7. Having entered the bank, Mr. Cansler saw a pair of sunglasses on a counter. He briefly spoke with a bank employee, took the glasses, and then exited the bank with the glasses.

8. At no time was Mr. Cansler violent or threatening while in the bank.

9. Mr. Cansler had, and offers, no excuse for his actions at the bank. As he recognizes, they were manifestations of mental aberrations, unwarranted and irrational.

10. The bank called the police, and Officer Hanks responded. Having obtained a description of the person who took the sunglasses, Officer Hanks began driving around the nearby area to look for him.

11. As he approached the southern end of the Rose Hill Shopping Center, Officer Hanks spotted Mr. Cansler, who matched the description provided by the bank manager. Officer Hanks drove his car in front of Mr. Cansler, got out, and approached him.

12. From the moment that Officer Hanks appeared until the moment, shortly thereafter, that he was tased, Mr. Cansler behaved cooperatively, peacefully, calmly, and in an entirely non-threatening manner.

13. Believing that Officer Hanks was there to help him, Mr. Cansler thanked Officer Hanks for coming. Officer Hanks asked Mr. Cansler whether he was alright, to which Mr. Cansler responded that he was not, that he was confused, and that he needed a glass of water.

14. Officer Hanks asked Mr. Cansler if he had a pair of sunglasses. Stating that he did, Mr. Cansler immediately gave them to Officer Hanks.

15. Upon being handed the sunglasses, Officer Hanks decided to take Mr. Cansler into custody for petit larceny, a non-violent misdemeanor offense.

16. After a brief discussion, during which Officer Hanks did not tell Mr. Cansler that he was under arrest, Officer Hanks stepped back from Mr. Cansler and unholstered his Taser.

17. Immediately upon Officer Hanks' pulling out his Taser, Mr. Cansler put his hands up over his head to convey that he was not resisting or threatening Officer Hanks.

18. Officer Hanks directed Mr. Cansler to face his police car and place his hands on the hood. Mr. Cansler did so.

19. Without warning or provocation, Officer Hanks fired his Taser into Mr. Cansler's back. At the time Officer Hanks fired his Taser, Mr. Cansler had his hands on the hood of Officer Hanks' police car, with his back to Officer Hanks.

20. The tasing was captured by a bystander's video, which may be viewed on line on You Tube at <Cansler v. Hanks> (also <https://www.youtube.com/watch?v=7-c4ok0Ukw8&feature=youtu.be>). The content of the

video is incorporated in this complaint as though set forth graphically herein.[1]

21. In deploying his Taser, Officer Hanks caused two probes attached to thin electrical wires to be fired into Mr. Cansler's back, penetrating his clothing and imbedding in his skin. The probes caused an electric shock of up to 100,000 volts to be delivered to Mr. Cansler on contact, for a period of seconds, sending him immediately to the ground in a convulsion of pain.

22. At the time of this incident, it was clearly established and universally known by reasonable law enforcement officers trained in the use of Tasers, including Officer Hanks, that deploying a Taser is a serious use of force designed to cause severe pain.

23. Nothing in the circumstances would have given a reasonable officer reason to think that Mr. Cansler was a potentially dangerous man, that he posed a threat to Officer Hanks or anyone else, or that he presented a risk of flight. To the contrary, Mr. Cansler had complied with Officer Hanks' commands, and Mr. Cansler's impaired speech, movements, and gait suggested that he was disabled, if not in need of assistance, as he himself told Officer Hanks.

24. The use of a Taser on Mr. Cansler was grossly excessive, disproportionate, and objectively unreasonable. It caused Mr. Cansler severe physical pain and served no legitimate law enforcement need. In addition, as a result of his tasing he suffered and continues to suffer a profound sense of fear, confusion, anger, and anxiety over unprovoked abuse at the hands of the law.

---

[1] The video, posted on line by the Fairfax Police, has been enlarged for clarity. The tasing occurs almost immediately once the video begins.

25.  Following the arrest and tasing, Officer J. Buckles, an officer who had responded to the scene, approached the owner of the sunglasses that Mr. Cansler had taken.  The owner informed Officer Buckles that he did not wish to press charges.

26.  Officer Buckles thereupon conferred with several other officers who had responded to the scene after Officer Hanks had tased Mr. Cansler.  One officer stated that because Officer Hanks had tased Mr. Cansler, Officer Hanks would have to charge him. Another officer suggested that Mr. Cansler be charged with assault on a law enforcement officer.[2]

27.  The charge of assault on a law enforcement officer was an after-the-fact fabrication intended to justify Officer Hanks' tasing of Mr. Cansler and thus protect Officer Hanks from a claim of excessive force.

28.  Following the arrest and tasing incident, Officer Hanks charged Mr. Cansler with petit larceny for the theft of the sunglasses and assault on a law enforcement officer.

29.  Mr. Cansler ultimately pleaded guilty to the larceny charge, and the Commonwealth dropped the assault charge, which was palpably baseless.

Fairfax County's Liability for its Unconstitutional Policies

30.  Fairfax County's policies relative to the law enforcement work of the Fairfax County Police Department are determined by the Chief of Police, defendant Roessler.  The policies are elaborated in police regulations and orders.

---

[2]It remains for discovery to reveal whether Officer Hanks made any of these comments or whether they were made to him.

31. Chief Roessler also oversees and disposes of investigations into complaints alleging that an officer's conduct did not comply with department policy.

32. If an investigation reveals that an officer's actions complied with departmental policy, the investigation is closed and the complaining party so advised. If the investigation reveals that the officer's actions did not comply with departmental policy, the officer will be disciplined appropriately.

33. At the time he tased Mr. Cansler, Officer Hanks was an on-duty police officer endowed with and using the police powers granted him by Fairfax County. He was at all relevant times subject to the policies and procedures governing police work in Fairfax County, including the Fairfax County Police Department's policies and procedures regarding the use of force, and those governing investigation of alleged police misconduct by the department's Internal Affairs Unit.

34. Fairfax County, through its police department, caused an investigation to be made into the tasing of Mr. Cansler. The investigation included receipt and review of the bystander's video referenced in ¶20 of this complaint, as part of what the county styled a comprehensive examination of the facts and circumstances surrounding the actions taken by Officer Hanks.

35. Following its "comprehensive investigation," Fairfax County, speaking through its Police Chief, confirmed that Officer Hanks' actions "were lawful and in compliance with Department Regulations." *See* Exhibit A, the contents of which are incorporated herein by reference.

36. On information and belief, Officer Hanks was not disciplined in any manner for having tased Mr. Cansler, the Police Department having determined that he acted in accordance with its governing policy.

37. As Chief of Police, defendant Roessler was at all relevant times charged to promulgate, train his officers on, and enforce disciplinary policies and practices calculated to make police officers understand that they would be held accountable for misconduct, not that they could reasonably count on getting away with it with impunity.

38. On information and belief, Fairfax County Police Department has a history of not properly investigating officer misconduct, including specifically use of force misconduct, or disciplining officers violating departmental regulations and policies. According to county reports, in 2015, the last full year for which statistics are available, of 64 complaints regarding officers' use of force, the department took a single disciplinary action, in the form of an oral reprimand.[3]

39. Following several highly publicized citizen deaths at the hands of Fairfax officers and the payment by the county of substantial sums in settlement of resulting wrongful death claims, the Department's failure to police itself was finally addressed by the Fairfax County Board of Supervisor on December 6, 2016, when it voted to create a Police Civilian Review Panel charged to investigate alleged police abuse. No such panel was in existence at the time of the events here at issue.

---

[3] Should discovery reveal that this force has been disproportionately directed at African Americans, plaintiff will amend his complaint to allege and seek recovery for racially discriminatory use of excessive force.

40. The notorious historic failure of the Police Department to discipline officers engaged in abuse was known to Officer Hanks and his colleagues on the day he tased Mr. Cansler and invented a bogus criminal charge to justify the tasing.  He relied on this failure in tasing Mr. Cansler without cause and then lying about it  – and got away with it as expected.

41.  Before and at the time of Officer Hanks' encounter with Mr. Cansler, Chief Roessler knew or should have known that his failure to see to the proper investigation and discipline of officers engaging in misconduct would inevitably lead to a police culture wherein officers would be emboldened to engage in misconduct, including the use of excessive force and the fabrication of baseless claims to justify it.  This is what occurred here, where an officer tased a man for no reason, demonstrably lied about it, and suffered no adverse consequences.

Causes of Action

Count I: Unreasonable Force: Officer Hanks

42.  In tasing Mr. Cansler as set forth above, Officer Hanks used excessive force in arresting Mr. Cansler, in derogation of Mr. Cansler's rights under the Fourth Amendment of the United States Constitution.

Count II(A): *Monell* Claim for Unreasonable Use of Taser: Fairfax County

43.  By endorsing Officer Hanks' use of a taser as being in accordance with the regulations and policies promulgated by the county via its police department, Fairfax County, by its own admission, proximately caused the injuries to Mr. Cansler of which he here complains, and is liable to him for the violation of his Fourth Amendment rights.

### Alternative Count II(B): Failure to Train on Use of Taser: Fairfax County and Chief Roessler

44. In the alternative to Count II(A), by failing to train Fairfax County's officers, including specifically Officer Hanks, on proper use of a Taser and then confirming Officer Hanks' unconstitutional use of force as complying with departmental, and thus county, policy, Fairfax County and Chief Roessler showed deliberate indifference to the rights of citizens coming into contact with their untrained officers. Mr. Cansler seeks redress for his injuries, which were proximately and actually caused by this failure to train, in violation of the Fourteenth Amendment of the United States Constitution.

### Count III: Supervisory Liability: Failure to Train, Supervise and Discipline: Chief Roessler

45. In failing, historically, properly to investigate officer misconduct, including specifically (a) demonstrably excessive use of force and (b) demonstrably false reporting of alleged assaults on police officers to cover up excessive use of force, and in failing properly to discipline officers engaged in such misconduct, as set forth above, defendant Roessler presided over the creation of a police culture wherein his officers were, as Officer Hanks was in the case at bar, emboldened to use excessive force and fabricate baseless claims to justify it, in the confidence that they could do so with impunity. This failure gives rise to supervisory liability on the part of Chief Roessler for Mr. Cansler's injuries pursuant to the Fourteenth Amendment of the United States Constitution.

***

Wherefore, Mr. Cansler requests an order of this court granting him:

* His actual damages against all defendants, jointly and severally, appropriate to the proof at trial,

* Punitive damages against Officer Hanks and Chief Roessler appropriate to the proof at trial,

* His costs, including reasonable attorney's fees, and

* Such other relief as is just.

Mr. Cansler requests trial by jury.

            Respectfully submitted,

            ELTON CANSLER,

            By Counsel

Dated: December 22, 2016

Counsel for Plaintiff:

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Maxwelle C. Sokol, #89589
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
CanslerElton\Pleadings\Complaint


//s// Maxwelle C. Sokol
Maxwelle C. Sokol, #89589
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100 / Fax: 703-684-1104
msokol@robinhoodesq.com